UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| JOHN M. COLLARD, Personal Representative<br>for the Estates of John L. Collard and<br>Louise M. Collard<br>522 Horn Point Drive<br>Annapolis, Maryland 21403<br><br>and<br><br>JOHN M. COLLARD, in his capacity as TRUSTEE<br>for the John L. Collard Trust<br><br>*Plaintiffs*,<br>v.<br><br>BANK OF AMERICA<br>100 North Tryon Street<br>Charlotte, North Carolina 28255<br><br>*Defendant,*<br><br>SERVE ON:<br>CT Corporation System, Resident Agent<br>160 Mine Lake Ct Suite 200<br>Raleigh, North Carolina 27615 | Case No.: 3:25-cv-680 |

## COMPLAINT

John M. Collard (hereinafter, "Collard"), by his attorneys IFW Law Group, and Erik B. Blowers, hereby file a Complaint (hereinafter, "Complaint") in the above captioned matter against Bank of America (hereinafter, "BofA") pursuant to the Uniform Commercial Code § 3-502, and in support thereof states:

1

## PARTIES

1. Plaintiff John M. Collard is a resident of Anne Arundel County, Maryland and the personal representative for the Estates of John L. Collard and Louise M. Collard. Plaintiff John Collard is also the trustee of the John L. Collard Trust.

2. The John L. Collard Trust is entitled to receive the funds referenced in this matter, pursuant to the distribution outlined in the Last Will and Testament of John L. Collard. Plaintiff John M. Collard serves as the trustee of the John L. Collard Trust.

3. Defendant, Bank of America, is a banking corporation incorporated in Delaware with its principal place of business in North Carolina. The address of the principal office and the principal business for Bank of America is 100 North Tryon Street, Charlotte, North Carolina 28255.

## JURISDICTION AND VENUE

4. This Court has personal jurisdiction over the parties as Bank of America's principal place of business is located in North Carolina.

5. This Court has subject matter jurisdiction over the claims and personal jurisdiction over the parties pursuant 28 U.S.C. § 1332. The parties are citizens of different states and the damages in question exceed $75,000. See *Aerial Adventure Techs., LLC v. C3 Mfg., LLC*, No. 5:23-CV-00018-KDB-SCR, 2023 U.S. Dist. LEXIS 88422 (W.D.N.C. May 18, 2023) (stating that "[A] district court has subject matter jurisdiction over a case…if 'the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between citizens of different States.'").

6. Venue for this action in this Court is appropriate pursuant to 28 U.S.C. § 1391.

## FACTS COMMON TO ALL COUNTS

7. On April 19, 1995, John L. Collard and Louise M. Collard, purchased three (3) Certificates of Deposit (hereinafter, "CDs") from Barnett Bank of Tampa. Copies of the original CDs, front and back, are attached hereto and incorporated herein by reference, as **Exhibit A.**

8. John L. Collard and Louise M. Collard exchanged a total of $120,498.05 for the three CDs for an initial term of thirty-six (36) months at an interest rate of 6.44% and an APY of 6.65%. The terms included in the CDs state that the CDs are subject to "automatic renewal." *Id*.

9. Moreover, these three (3) CDs also expressly provide that "the CD shall be automatically renewed at maturity for successive periods of equal length as the original term, at the interest rate and APY posted in the lobby of the bank on the maturity date for CDs of the same term and amount, unless redeemed by or on behalf of the depositor within seven days after maturity of any term." *Id*. At no time did the depositors redeem the CDs, as demonstrated by the continued possession of the original CDs by the personal representative of the depositors' estates.

10. The CDs further state that "[i]nterest will be compounded daily on the collected balance and calculated on a 365/366 day basis. The bank uses the daily balance interest method to calculate the interest on your account. This method applies a daily periodic rate to the collect balance on the account each day…Interest is paid to the CD annually and at maturity[.]" *Id*.

11. The bank "reserve[d] the right to not renew any CD upon maturity by notifying the depositor within 30 days prior to maturity in writing, mailed to depositor's address;" however, at no point in time did John L. Collard, Louise M. Collard, or John M. Collard

ever receive any written notice from the Defendant financial institution of any intention that any of these three (3) CDs would not be renewed.

12. Barnett Bank of Tampa merged and became part of NationsBank, National Association in 1998 and was renamed Bank of America, National Association in 1999. A copy of Barnett Bank of Tampa's institutional history, provided by the Federal Deposit Insurance Corporation, is attached hereto and incorporated herein by reference, as **Exhibit B.**

13. Plaintiff John M. Collard became the personal representative of the Estates of John L. Collard and Louise M. Collard in 2015 and 2006, respectively.

14. John M. Collard, upon attending to matters of his parents' estates, only recently became aware of the CDs.

15. The CDs in Plaintiff's possession are originals, and Plaintiff has no record of transfers, closures, notices of nonrenewal, etc.

16. On October 17, 2024, John M. Collard provided written notice to Bank of America, located at 2120 West Street Annapolis, MD 21401, of his intention to redeem the three (3) CDs. A copy of the documents presented by John M. Collard in his attempt to redeem as attached hereto and incorporated herein by reference, as **Exhibit C.** Along with his written notice, John M. Collard presented the original CDs, proof of his authority to redeem the CDs as personal representative of the Collards' estates, and the account number to which funds could be deposited. *Id*.

17. Notwithstanding the express language of the CDs, Bank of America, through its Assistant Vice President, Nadia Bissram, refused to honor the CDs. John M. Collard

sent Bissram a follow-up email summarizing the interaction. The email to Bissram is attached hereto and incorporated herein by reference, as **Exhibit D.**

18. Subsequently, John M. Collard received a letter from Steve Volpe, Senior Vice President, Consumer Banking Operations Manager, of Bank of America, based in North Carolina, stating that Bank of America could not provide any information about the CDs. The letter is attached hereto and incorporated herein by reference, as **Exhibit E.**

19. Notwithstanding the express language of the CDs, which allowed the three (3) CDs totaling $120,498.05 to be "automatically renewable," Defendant has dishonored these instruments, and refuses to pay Plaintiff his funds on general deposit.

20. The three (3) CDs, including accumulated interest, have a total value ranging from $305,360.68 with variable interest to $888,679.51 with fixed interest or higher. Six schedules detailing calculations at variable and fixed interest rates are attached hereto and incorporated herein by reference, as **Exhibit F.**

## COUNT 1: WRONGFUL DISHONOR

21. Plaintiff hereby incorporates by reference the allegations and averments of paragraphs one through twenty.

22. "[A] payor bank wrongfully dishonors an item if it dishonors an item that is properly payable[.]" N.C. Gen. Stat. § 25-4-402(a).

23. As noted above, Bank of America wrongfully dishonored the CDs held by John M. Collard even though they are properly payable. The CDs held by Plaintiff are originals, have been presented for payment, but have been dishonored without cause.

24. "A payor bank is liable to its customer for damages proximately caused by the wrongful dishonor of an item." N.C. Gen. Stat. § 25-4-402(b).

25. Bank of America is liable to John M. Collard for damages caused by its wrongful dishonor of the valid CDs. BofA's wrongful dishonor gives rise to this cause of action. *See* N.C. Gen. Stat. § 25-4-402, Comment 1.

26. "[D]ishonor occurs when a debtor fails to pay[.]" *Scudder v. Countrywide Home Loans*, No. 1:05CV00784, 2006 U.S. Dist. LEXIS 108775 (M.D.N.C. Aug. 2, 2006).

27. "Dishonor of a note is governed by the following rules: (1) If the note is payable on demand, the note is dishonored if presentment is duly made to the maker and the note is not paid on the day of presentment. (2) If the note is not payable on demand and is payable at or through a bank or the terms of the note require presentment, the note is dishonored if presentment is duly made and the note is not paid on the day it becomes payable or the day of presentment, whichever is later. (3) If the note is not payable on demand and subdivision (2) does not apply, the note is dishonored if it is not paid on the day it becomes payable." N.C. Gen. Stat. § 25-3-502.

28. "'Presentment' means a demand made by or on behalf of a person entitled to enforce an instrument (i) to pay the instrument made to the drawee or a party obliged to pay the instrument or, in the case of a note or accepted draft payable at a bank, to the bank, or (ii) to accept a draft made to the drawee." N.C. Gen. Stat. § 25-3-501(a). "Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a

receipt on the instrument for any payment made or surrender the instrument if full payment is made." N.C. Gen. Stat. § 25-3-501(b)(2).

29. "[A] bank is under obligation to pay the checks, drafts and orders of a depositor…The duty of the bank to make such payments, and the reciprocal right of the depositor to have them made, arises from the contract to that effect, which though probably never definitely expressed, will always be considered to be implied from the usual course of the banking business. This duty and this right are so far substantial, that if the bank refuse, without sufficient justification, to pay the check of the customer, the customer has his action for damages against the bank." *Woody v. Nat'l Bank of Rocky Mount*, 194 N.C. 549, 554, 140 S.E. 150, 153 (1927).

30. As stated above, presentment was made by John M. Collard on October 17, 2024 at Bank of America located at 2120 West Street, Annapolis, Maryland 21401; however, payment was not made to him. Presentment was duly made by Plaintiff when he presented the original CDs and his identification as the Personal Representative of his parents' estates. The CDs may be redeemed at any time; therefore, by BofA failing to make payment to Plaintiff on the day of presentment, it is in violation of N.C. Gen. Stat. § 25-3-501 and breached its duty under N.C. Gen. Stat. § 25-4-402.

31. "Notice of dishonor may be given by any person; may be given by any commercially reasonable means, including an oral, written, or electronic communication; and is sufficient if it reasonably identifies the instrument and indicates that the instrument has been dishonored or has not been paid or accepted. Return of an instrument given to a bank for collection is sufficient notice of dishonor." N.C. Gen. Stat. § 25-3-503

32. Notice of dishonor was given by BofA's return of documents to Collard on the day of presentment, as well as by the letter sent to Collard by BofA on October 24, 2024.

33. BofA is liable for wrongful dishonor because it refused to issue Collard the CD funds when he sought to withdraw the payable funds.

34. BofA owes a duty to Plaintiff to honor the CDs. By failing to honor the CDs, BofA has breached its duty to John M. Collard and has violated North Carolina Commercial Law, which has resulted in losses to Collard.

WHEREFORE, Plaintiff, John M. Collard, demands judgment against Defendant, Bank of America, for an amount in excess of Seventy-Five Thousand Dollars ($75,000), plus interest, costs, and for all further relief which this Court deems just and proper.

## COUNT 2: CONVERSION

35. Plaintiff hereby incorporates by reference the allegations and averments of paragraphs one through thirty-four.

36. "The tort of conversion is well defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" Peed v. Burleson's Inc., 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) (quoting 89 C.J.S., Trover & Conversion, sec. 1). "There are, in effect, two essential elements of a conversion claim: ownership in the plaintiff and wrongful possession or conversion by the defendant." *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523, 723 S.E.2d 744, 747 (2012) (citing *Gadson v. Toney*, 69 N.C. App. 244, 246, 316 S.E.2d 320, 321-22 (1984)).

37. As established above, Collard has ownership of the CDs as the Personal Representative of his parents' estates.

38. In denying to honor the CDs BofA has exercised an act of wrongful possession, ownership and dominion over the personal property of Collard in denial of his rights. By retaining the funds associated with the CDs for longer than Collard has permitted, BofA has met the threshold for the act of ownership required for conversion. BofA exerted control over the CD funds when it denied payment to Collard.

39. As noted above, Collard did not consent to the withholding of the CD funds, rather he attempted to withdraw the funds, but was wrongfully denied by BofA.

40. "The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner[.]" *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 532, 551 S.E.2d 546, 552 (2001) (quoting 89 C.J.S. Trover and Conversion § 3, pp. 533-34). Collard has been wrongfully deprived of the money associated with CDs.

41. "For a conversion claim, damages are determined by the 'fair market value of the converted property at the time of the conversion, plus interest.'" *Heaton-Sides v. Snipes*, 233 N.C. App. 1, 5, 755 S.E.2d 648, 651 (2014) (quoting *Bartlett Milling Co., v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 81, 665 S.E.2d 478, 485 (2008)).

42. As BofA is liable for conversion, it must pay damages to Collard, including interest.

WHEREFORE, Plaintiff, John M. Collard, demands judgment against Defendant, Bank of America, for an amount in excess of Seventy-Five Thousand Dollars ($75,000), plus interest, costs, and for all further relief which this Court deems just and proper.

## COUNT 3: BREACH OF CONTRACT

43. Plaintiff hereby incorporates by reference the allegations and averments of paragraphs one through forty-two.

44. "The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." *Poor v. Hill*, 138 N.C. App. 19, 26, 530 S.E.2d 838, 843 (2000) (citing *Jackson v. Carolina Hardware Co.*, 120 N.C. App. 870, 871, 463 S.E.2d 571, 572 (1995)).

45. BofA owed Plaintiff a contractual obligation to honor the Certificates of Deposit. As noted above, BofA and John L. and Louise M. Collard entered into a valid, binding agreement when they established the CDs on April 19, 1995. The CDs were signed by BofA and stated that "the CD[s] shall be automatically renewed at maturity for successive periods of equal length as the original term." **Exhibit A.**

46. BofA breached the CD agreement with Plaintiff. The express language in the CDs is clear that the CDs would automatically renew every three years and that interest would be added to the accounts. *Id*. The CDs provide for the withdrawal of funds by the depositors. *Id*. Further, "[i]n the case of the depositor's death…, the bank will be required to honor a request for withdrawal prior to maturity, without penalty, with proper documentation." *Id*. Here, BofA refused to honor the request for withdrawal made by Plaintiff on behalf of the estates of his parents, the depositors.

47. Defendant BofA owed a contractual obligation to Collard through the CDs. BofA breached its contractual obligation when it failed to honor the CDs upon presentment by Collard.

WHEREFORE, Plaintiff, John M. Collard, demands judgment against Defendant, Bank of America, for an amount in excess of Seventy-Five Thousand Dollars ($75,000), plus interest, costs, and for all further relief which this Court deems just and proper.

## COUNT 4: UNJUST ENRICHMENT

48. Plaintiff hereby incorporates by reference the allegations and averments of paragraphs one through forty-seven.

49. In the event the Court finds that no enforceable contract exists between the Parties, Plaintiff seeks damages for unjust enrichment, as Defendant has received a benefit that would be inequitable to retain.

50. "Under a claim for unjust enrichment, a plaintiff must establish certain essential elements: (1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." *Lake Toxaway Cmty. Ass'n v. RYF Enters., LLC*, 226 N.C. App. 483, 490, 742 S.E.2d 555, 561 (2013) (quoting *Primerica Life Ins. Co. v. James Massengill & Sons Constr. Co*., 211 N.C. App. 252, 260, 712 S.E.2d 670, 677 (2011)).

51. A benefit was conferred upon Defendant when John L. and Louise M. Collard contracted with BofA to keep their $120,498.05 funds on deposit.

52. Defendant had appreciation and knowledge of the benefit conferred to it and consciously accepted that benefit, as can be demonstrated by the signed CDs it gave to the Collards as a contract in exchange for the funds.

53. "The benefit must not have been conferred officiously, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances." *Booe v. Shadrick*, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988).

11

"The benefit must not be gratuitous and it must be measurable." Booe v. Shadrick, 322 N.C. 567, 570, 369 S.E.2d 554, 556 (1988). "[T]he measure of damages for unjust enrichment is the reasonable value of the goods and services to the defendant." *Id*. The CDs were not conferred officiously or gratuitously. The resulting damages are measurable, as can be seen in **Exhibit F.**

54. Defendant has retained the benefit as it refused to honor the CDs, and no funds have been returned to Plaintiff or the estates of John L. and Louise M. Collard. It is inequitable for the defendant to retain the benefit without the payment of its value.

WHEREFORE, Plaintiff, John M. Collard, demands judgment against Defendant, Bank of America, for an amount in excess of Seventy-Five Thousand Dollars ($75,000), plus interest, costs, and for all further relief which this Court deems just and proper.

## JURY DEMAND

55. Plaintiff hereby demands a jury for the trial of this case.

Respectfully submitted,

IFW Law Group

By: /s/ *Erik B. Blowers*
Erik B. Blowers
Bar Number: 51190
13860 Ballantyne Corporate Pl. #240
Charlotte, NC 28277
Telephone: (704) 607-8870
Facsimile: (704) 452-4000
Email: Erik@ifwlawgroup.com
*Attorneys for Plaintiff John M. Collard*

12